NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **LENORE F. KAUFMAN,** | : | Civil Action No. 03-3085 (MLC) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **LETTER OPINION AND ORDER** |
| **SOUTHERN WINNERS, INC., et al.,** | : | [Docket Entry #'s 12 and 15] |
| | : | |
| Defendants. | : | |

------------------------------------------------------

**BONGIOVANNI, MAGISTRATE JUDGE**

## I.  INTRODUCTION

This matter comes before the Court in two Motions: a Motion to Enforce Settlement by Plaintiff Lenore F. Kaufman [Docket Entry #12] and a Motion to Withdraw as Counsel by Lowenstein Sandler, P.C., Miguel Alexander Pozo, Esq., filed as its own Motion in lieu of a response to Plaintiff's Motion to Enforce Settlement [Docket Entry # 15].  The parties entered into a Stipulation of Settlement and Consent Order on March 9, 2005.  The Motion to Enforce Settlement was filed on June 14, 2005.  For the reasons set forth below, Plaintiff's Motion to Enforce Settlement and Lowenstein Sandler's Motion to Withdraw as Counsel will be granted.

## II.  BACKGROUND

Plaintiff Lenore F. Kaufman is the executrix of the Estate of Arthur Kaufman. (Def.'s Br., Ex. A.)  On June 26, 2003, Plaintiff filed a Complaint against Defendants Southern Winners and Mitchell D. Ostrover. (*See* Docket Entry #1.)  The Complaint alleges that Arthur Kaufman had previously entered into a Stockholders Agreement and obtained shareholder interests in Southern

Winners, Inc., d/b/a/ Radio Shack, to which Mitchell D. Ostrover was an Officer, Director and majority shareholder. (Def.'s Br., Ex. A.) In the Stockholders Agreement was a clause that provided that upon Arthur Kaufman's death, the representative of his Estate would be required to sell and Southern Winners, Inc. and/or its shareholders to buy all of his shares. (Id.) On October 1, 2001, Arthur Kaufman passed away. (Id.) Thereafter, Plaintiff Lenore F. Kaufman, as executrix, attempted to sell the shares of Southern Winners, Inc. back to Southern Winners, Inc. and its shareholders. (Id.) The company and its shareholders failed to purchase the shares at fair market value, in violation of the Shareholders Agreement. (Id.)

Defendants filed an Answer to Plaintiff's Complaint on October 21, 2003. (*See* Docket Entry #4.) Thereafter, the parties engaged in settlement negotiations and on March 9, 2004, entered into a settlement agreement. (Def.'s Br., p. 2.) The terms of the agreement are codified and require, in relevant part, that Southern Winners, Inc. pay Plaintiff $25,000 without interest in consecutive equal monthly installments of $1,041.67, to commence on March 1, 2004 and to continue on the first day of each subsequent month for two years, with payments concluding on February 1, 2006. (Def.'s Br., Ex. C.) The agreement further provides that should Southern Winners, Inc. fail to make a payment within ten days of a required due date, Plaintiff would be entitled to a judgment against Southern Winners in the amount of $30,000, less credit for payments received, with interest on the unpaid balance dating back to March 1, 2004 at a rate of seven percent per annum. (Def.'s Br., Ex. C.)

The settlement agreement was accepted by the Honorable Mary L. Cooper, United States District Judge, and the agreement in its entirety was entered on the docket on March 9, 2004. Thereafter, Defendants made their monthly payments for March, 2004 through August, 2004,

with the sixth payment (August) being untimely paid on December 16, 2004. (Pl.'s Br., p. 2.) The sixth monthly payment contained correspondence from Defendants' counsel that Southern Winners was going to begin to make their payments in $500 weekly installments until the debt was satisfied. (Id.) On February 15, 2005, Plaintiff's counsel received their first and only $500 payment installment. (Id.) No further financial remuneration has been made by Defendants. (Id.)

After the filing of the Motion to Enforce Settlement, this Court had conducted several telephonic conferences in an attempt to facilitate compliance with the settlement agreement by Defendants. (Def.'s Br., p. 5.) During one call, counsel for Defendant indicated that his client was seeking to obtain a bank loan in order to meet its obligations under the terms of the agreement. Additional time was afforded the Defendant to obtain such financing. However, to date, Plaintiff has not received any payments from Defendants after the February 15, 2005 $500 installment. (Pl.'s Br., p. 2.)

Further negotiation seems impracticable as Defendants' counsel (Lowenstein Sandler, P.C., Miguel Pozzo, Esq.) cites a breakdown in communication between Defendants and counsel. (Def.'s Br., p. 2.) Moreover, Defendants sustain an obligation in excess of $10,000 for legal services rendered on Defendants' behalf. (Id.)

### III. DISCUSSION

**A.**     <u>**Motion to Enforce Settlement**</u>

It has long since been recognized that district courts may enforce a settlement agreement entered into by the parties. "A district court has ancillary jurisdiction to enforce a settlement agreement if the court retain jurisdiction by a separate provision or by incorporating the terms of

the settlement agreement into an order." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 391 (1994); Wright v. Prudential Ins. Co., 285 F.Supp. 2d 515, 520 (D.N.J. 2003) ("Courts have repeatedly affirmed the power of a court approving a settlement agreement to exercise its discretion to retain jurisdiction over the enforcement of the agreement, so long as it does so explicitly in the dismissal order.") As such, this Court will consider Plaintiff's Motion to Enforce Settlement.

"A settlement agreement between parties to a lawsuit is a contract." Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143, 146 (1990); Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970) (holding that when parties voluntarily enter into a settlement agreement to end a law suit, the resulting contract is binding upon them.) Because settlement agreements are considered contracts, the construction and enforcement of said agreements is governed by state law, even in federal court. See Excelsior Ins. Co. v. Pennsbury Pain Center, 975 F. Supp. 342, 348-49 (D.N.J. 1996). New Jersey courts generally refuse to vacate settlement agreements absent a demonstration of fraud, mutual mistake, or other compelling circumstances. See Nolan, 120 N.J. at 472, 577 A.2d at 146; see also Great Bay Hotel & Casino, Inc. v. Tose, 1991 WL 639131, at *5 (D.N.J. 1991).

Here, no defects to contract formation have been asserted by Defendants. No compelling circumstances have been demonstrated. Defendants willingly entered into the settlement agreement with Plaintiff, and initially attempted to comply with the terms of that agreement. However, a substantial portion of the balance remains, with no indication from Defendants that they will comply, even after several attempts by this Court were made to assist the parties with

their post settlement disputes.  As such, the settlement agreement between the parties is enforceable, and this Court shall so find.

**B.**     **Motion to Withdraw as Counsel**

      L.R.Civ.P. 102.1 provides the legal authority for a Motion to Withdraw as Counsel.  It states, in relevant part, that "unless other counsel is substituted for a party, no attorney may withdraw an appearance except by leave of Court."  The decision as to whether to grant a Motion to Withdraw is within this Court's discretion.  See Rusinow v. Kamara, 920 F.Supp. 69, 71 (D.N.J. 1996).

When evaluating a Motion to Withdraw, a court must consider the following criteria: (1) the reason withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal may cause to the administration of justice; and (4) the degree to which withdrawal may delay the resolution of the case.  See U.S. ex rel. Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc., 994 F.Supp. 244, 252 (D.N.J. 1997).

In the present matter, because this Court will enforce settlement, withdrawal of counsel for Defendants would not delay the resolution of this case, nor would it prejudice Plaintiff (indeed, Plaintiff does not object to Lowenstein Sandler's Motion).  Additionally, the administration of justice cannot be harmed.  Finally, the reason for withdrawal is valid.  The inability of an attorney/firm to communicate with their client, coupled with Defendants' failure to honor the settlement agreement puts Lowenstein Sandler in a no-win situation.  They cannot themselves comply with the terms of the settlement, and they are unable to communicate to Defendants their need to comply.  Furthermore, Defendants remain substantially indebted to Lowenstein Sandler for legal services rendered.  Such representation requires remuneration, and

although that in itself is not an acceptable basis to withdraw, taken together with the other criteria previously analyzed, it is a factor to consider.

Therefore, for the aforementioned reasons, this Court shall allow Lowenstein Sandler to withdraw as counsel for Defendants.

## IV. ORDER

ACCORDINGLY, IT IS, on this 18th day of November, 2005,

ORDERED that Plaintiff's Motion to Enforce Settlement is GRANTED; and it is further

ORDERED that judgment in the amount of $30,000, less credit for payments received in the amount of $6,750.02, plus interest on the unpaid balance of $23,249.98 to be calculated from March 1, 2004, the date of default, at a rate of 7% per annum, in the amount of $2,809.40 for a total of $26,059.38 shall be entered; and it is further

ORDERED that Defendants shall also pay attorney's fees and costs incurred by Plaintiff in seeking to enforce settlement in the amount of $1,225; and it is further

ORDERED that Lowenstein Sandler, P.C. shall be permitted to withdraw as counsel for Defendants.

s/Tonianne J. Bongiovanni  
**HONORABLE TONIANNE J. BONGIOVANNI**  
**UNITED STATES MAGISTRATE JUDGE**